IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LARRY PERCIVAL,

      Plaintiff,                    No. CIV S-03-0229 LKK PAN P

  vs.

MIKE KNOWLES, et al.,          ORDER AND

      Defendants.             FINDINGS & RECOMMENDATIONS

_____/

      Plaintiff is a state prison inmate proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. On February 8, 2006, defendant Dostrow filed a motion to dismiss based on plaintiff's alleged failure to exhaust administrative remedies and also filed a motion for judgment on the pleadings. On March 20, 2006, defendant Dostrow filed a motion for summary judgment. After receiving an extension of time, plaintiff filed oppositions to all three motions on April 12, 2006. Defendant Dostrow has filed replies.

PLAINTIFF'S CLAIMS

      Plaintiff claims that on April 2, 2002, while working in the Prison Authority Sewing/Textiles Department, a needle on plaintiff's sewing machine shattered and fragments struck plaintiff in his right eye. On April 16, 2002, plaintiff was seen by Dr. Cole, an optometrist at Mule Creek State Prison, who told plaintiff he may have sustained severe retinal damage. Dr.

1

Cole examined plaintiff on May 16, 2002 and referred plaintiff to the Modesto Eye Surgery Clinic. Plaintiff was examined by Dr. Gregory Tesluk at that clinic on June 17, 2002. Dr. Tesluk diagnosed plaintiff as suffering from a detached retina that required surgery. Plaintiff was returned to Mule Creek.

On June 25, 2002, plaintiff was transported back to the Doctors Medical Center in Modesto and Dr. Tesluk performed a scleral buckle procedure to reattach the retina in plaintiff's right eye. Plaintiff was observed overnight and returned to Mule Creek the next day. Plaintiff alleges Dr. Tesluk wrote plaintiff a pain medication prescription: one Vicodin tablet every four to six hours for one week.

Plaintiff's allegations concerning Dr. Dostrow revolve around Dr. Dostrow's treatment of plaintiff on June 26 and 30, 2002. Plaintiff alleges Dr. Dostrow was deliberately indifferent to plaintiff's serious medical needs on June 26, 2002, because Dr. Dostrow

> cut the pain medication from one every 4 to six hours to one Vicodin every twelve hours for three days, he stated that there are very few pain receptors in the eye and that even though the surgeon Dr. Tesluk prescribed the previous dosage, Dr. Tesluk does not run prescriptions . . . at Mule Creek.

(Complaint at 11.) Plaintiff states on June 30, 2002, he was "escorted to the infirmary in extreme pain and received an injection of Toradol, his pain medication was re-prescribed to one Tylenol-3 twice daily for three days." (Complaint at 11.) These are the sole allegations concerning Dr. Dostrow.

I. Motion to Dismiss

Defendants move to dismiss this action for failure to exhaust administrative remedies prior to suit, as required by 42 U.S.C. § 1997e(a). On October 2, 2003, plaintiff received the notice required by Wyatt v. Terhune, 315 F.3d 1108 (9th Cir. 2003) with respect to the requirements for opposing a motion to dismiss for failure to exhaust administrative remedies.

/////

/////

ANALYSIS

"Section 1997e(a) of Title 42 of the United States Code provides:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

This exhaustion requirement is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001)." McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002); see also Porter v. Nussle, 534 U.S. 516, 524 (2002). Exhaustion must precede the filing of the complaint and that compliance with the statute is not achieved by satisfying the exhaustion requirement during the course of an action. McKinney, 311 F.3d at 1199. Defendants have the burden of establishing that plaintiff failed to satisfy the exhaustion requirement of 42 U.S.C. § 1997e(a). See Wyatt, 315 F.3d at 1120; see also Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005).

> California's Department of Corrections provides a four-step grievance process for prisoners who seek review of an administrative decision or perceived mistreatment. Within fifteen working days of "the event or decision being appealed," the inmate must ordinarily file an "informal" appeal, through which "the appellant and staff involved in the action or decision attempt to resolve the grievance informally." Cal.Code Regs., tit. 15, §§ 3084.5(a), 3084.6(c). [Footnote omitted.] If the issue is not resolved during the informal appeal, the grievant next proceeds to the first formal appeal level, usually conducted by the prison's Appeals Coordinator. Id. §§ 3084.5(b), 3084.6(c). Next are the second level, providing review by the institution's head or a regional parole administrator, and the third level, in which review is conducted by a designee of the Director of the Department of Corrections. [Footnote omitted.] Id. § 3084.5(e)(1)-(2).

Brown v. Valoff, at 929-30.

In his responses to requests for admissions, plaintiff was unable to admit or deny that he had exhausted his claims as to Dr. Dostrow. In his opposition, plaintiff contends this claim was properly encompassed by his inmate grievance #A-02-00876, which he did appeal to the Director's Level. (Opp'n at 2.) Plaintiff argues that the only reason he submitted the second inmate grievance (A-02-1680) was in an effort to get the pain medication increased to the dosage

3

1  and frequency that Dr. Teslok prescribed. (Id.) This grievance was initially processed as an
2  emergency appeal and the informal level was bypassed, but despite the regulation that requires
3  emergency 602s to be processed within five days (CCR § 3084.7(B)), plaintiff contends he
4  received no response for over thirty days. (Opp'n at 2.) The grievance was then denied because
5  Dr. Glen Douglas, a gynecologist, stated plaintiff was in no apparent discomfort. (Id.) Plaintiff
6  argues that any further appeals of that grievance would have been futile because his eye had
7  healed from the surgery and he no longer needed pain medication. (Id.)

8       Defendant Dostrow has provided a copy of an appeal listing for plaintiff which
9  shows plaintiff appealed grievance 02-0876 to the third level, but only appealed 02-1680 to the
10 second level. (Deft.'s Ex. A.) Defendant has also provided copies of plaintiff's administrative
11 appeals for 02-1680. (Deft.'s Ex. B.) A review of these documents demonstrate that plaintiff's
12 claims against Dr. Dostrow were not included in this appeal and could not have been included
13 because the grievance was filed prior to Dr. Dostrow's treatment of plaintiff.

14      Plaintiff's appeal 02-0876 concerned the initial injury to his eye on April 2, 2002,
15 as well as complaints he had about the delay he experienced in obtaining medical care
16 immediately post injury. (Deft.'s Ex. B.) Plaintiff also included complaints that one week post
17 injury his eye had not returned to normal. (Id.) Plaintiff's initial grievance 02-0876 was dated
18 April 10, 2002. (Id.)

19      In his complaint, however, plaintiff alleges he received the scleral buckle
20 procedure to repair a detached retina on June 25, 2002. (Complaint at 11.) Dr. Dostrow did not
21 treat plaintiff until he had returned to Mule Creek State Prison on June 26, 2002. (Id.)

22      Therefore, grievance 02-0876 could not have put prison authorities on notice that
23 plaintiff was complaining of lack of medical care after he had been returned to Mule Creek
24 following the scleral buckle procedure. Gomez v. Wilson, 177 F.Supp.2d 977, 982 (N.D. Cal.
25 2001.)
26 /////

Plaintiff's argument that further appeal of grievance 02-1680 would have been futile because his eye had healed by the time the second level appeal was denied is also unavailing.  Futility is not an exception to the exhaustion requirement.  Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001).  Plaintiff does not show that the third level of the CDC's administrative appeal process was unavailable to him despite his good faith efforts to take advantage of the process, which showing might satisfy the requirements of the exhaustion statute.  Indeed, plaintiff concedes he failed to appeal this grievance to the Director's Level.  As defendant points out, if plaintiff had appealed to the third level of review, the Director or his designee could have addressed plaintiff's claim that Dr. Dostrow disregarded the medical orders of plaintiff's surgeon, particularly since it was possible Dr. Dostrow might provide for plaintiff's medical treatment in the future.

Plaintiff has therefore failed to exhaust his administrative remedies with regard to his claims against Dr. Dostrow and the motion to dismiss should be granted.

II.  Motion for Summary Judgment

However, even if plaintiff had exhausted his administrative remedies, defendant Dostrow would be entitled to summary judgment.

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

1  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers
2  to interrogatories, and admissions on file.'"  <u>Id.</u>  Indeed, summary judgment should be entered,
3  after adequate time for discovery and upon motion, against a party who fails to make a showing
4  sufficient to establish the existence of an element essential to that party's case, and on which that
5  party will bear the burden of proof at trial.  See <u>id.</u> at 322.  "[A] complete failure of proof
6  concerning an essential element of the nonmoving party's case necessarily renders all other facts
7  immaterial."  <u>Id.</u>  In such a circumstance, summary judgment should be granted, "so long as
8  whatever is before the district court demonstrates that the standard for entry of summary
9  judgment, as set forth in Rule 56(c), is satisfied."  <u>Id.</u> at 323.

10      If the moving party meets its initial responsibility, the burden then shifts to the
11 opposing party to establish that a genuine issue as to any material fact actually does exist.  <u>See</u>
12 <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In attempting to
13 establish the existence of this factual dispute, the opposing party may not rely upon the
14 allegations or denials of its pleadings but is required to tender evidence of specific facts in the
15 form of affidavits, and/or admissible discovery material, in support of its contention that the
16 dispute exists.  <u>See</u> Fed. R. Civ. P. 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11.  The opposing party
17 must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
18 of the suit under the governing law, <u>see</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248
19 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir.
20 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could
21 return a verdict for the nonmoving party, <u>see</u> <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433,
22 1436 (9th Cir. 1987).

23      In the endeavor to establish the existence of a factual dispute, the opposing party
24 need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
25 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
26 versions of the truth at trial."  <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.  Thus, the "purpose of summary

1  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
2  genuine need for trial.'" Matsushita, 475 US. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
3  committee's note on 1963 amendments).
4     In resolving the summary judgment motion, the court examines the pleadings,
5  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
6  any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson,
7  477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the
8  court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587.
9  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
10 produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen
11 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
12 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
13 show that there is some metaphysical doubt as to the material facts . . . . Where the record taken
14 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
15 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).
16    On October 2, 2003, the court advised plaintiff of the requirements for opposing a
17 motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154
18 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); Klingele v.
19 Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).
20             UNDISPUTED FACTS
21    Upon discharge from the Doctors Medical Center in Modesto, plaintiff was
22 provided with Discharge Instruction Notes concerning his post-procedure care. (Complaint, Ex.
23 5.) At the bottom of these notes, Dr. Tesluk noted the following medications:

24    Pred Forte  )
   Atropine 1% )   Ť atts OD qid
25    Tobrex )

26 /////

1     Vicodin Ť po q4-6h prn eye pain (should only be necessary for one week)

2  (Complaint, Ex. 5.)

3     Dr. Tesluk also wrote a letter to the Chief Medical Officer at Mule Creek State

4  Prison, dated June 25, 2002, in which he confirmed the scleral buckle procedure was successful

5  and offered the following post-discharge recommendations:

> I recommend that [plaintiff] stay in the infirmary for one to two days and receive Vicodin pain medications every four to six hours as needed for pain. Vicodin should not be necessary after one week. . . . No special positioning is needed, and [plaintiff] does not require bed rest. His postoperative eyedrops should include Pred-Forte, Atropine 1%, and Tobrex eyedrops, which he should take four times a day in the right eye. These medications will be sent with him back to prison from the hospital.

(Complaint, Ex. 5.)

Upon plaintiff's return to Mule Creek State Prison, he was placed in the infirmary. (Complaint at 11.) Dr. Dostrow was the physician on duty in the infirmary when plaintiff arrived. (Complaint at 11; Dostrow Decl. at 1.) Dr. Dostrow was responsible for reviewing plaintiff's records from Doctors Medical Center and the post-procedure recommendations of Dr. Tesluk. (Dostrow Decl. at 2.)

After Dr. Dostrow reviewed plaintiff's medical records, he wrote plaintiff a prescription for Pred-Forte eyedrops, Atropine 1% eyedrops and Tobrex eyedrops to be administered four times a day in the right eye. (Dostrow Decl. at 2, 5.) Pred-Forte eyedrops contain a steroid medication that eases redness, irritation and swelling in the eye. (Dostrow Decl. at 2-3.) Atropine eyedrops are used to relax the muscles that inflame and over-contract in the eye as well as for pain relief. (Dostrow Decl. at 2-3.) Tobrex eyedrops are used to prevent eye infections. (Dostrow Decl. at 2, 5.)

Dr. Dostrow also prescribed plaintiff one Vicodin tablet every twelve hours for three days. (Complaint at 11; Dostrow Decl. at 2, 5.) Dr. Dostrow renewed plaintiff's existing

/////

1  prescription for Gabapentin, also a pain medication, for plaintiff to take in conjunction with the
2  Vicodin.  (Dostrow Decl. at 2, 5.)

3  Gabapentin and Neurontin are the same drug.  (Dostrow Decl. at 4.)

4  Plaintiff contends Dr. Dostrow informed plaintiff that the dosage for Vicodin was
5  reduced because the eye contains very few pain receptors.  (Complaint at 11.)  Dr. Dostrow
6  declares that the majority of patients who undergo a scleral buckle procedure experience very
7  little pain following the procedure because the eye contains very few pain receptors.  (Dostrow
8  Decl. at 2.)

9  Plaintiff's medical records demonstrate that plaintiff was not seen by a physician
10 at Mule Creek State Prison for complaints of pain between June 26, 2002 and June 29, 2002.
11 (Dostrow Decl. at 2-3, 5; Ex. A.)

12 On June 29, 2002, Dr. Dostrow renewed plaintiff's prescription for pain
13 medication by ordering plaintiff to receive one Tylenol #3 tablet twice a day for three days.
14 (Dostrow Decl. at 4.)

15 Tylenol #3 is acetaminophen with codeine.  Vicodin is a pain medication related
16 to codeine.  (Dostrow Decl. at 4.)

17 Plaintiff was escorted to the prison infirmary on June 30, 2002 complaining of
18 increased pain in his right eye.  (Complaint, Ex. 5.)  Plaintiff received an injection of Toradol, an
19 anti-inflammatory drug used to relieve pain.  (Complaint at 11, Ex. 5; Dostrow Decl. at 4, 5.)

20 On July 1, 2002, Dr. Dostrow renewed plaintiff's prescription for Tylenol #3 for
21 an additional three days.  (Dostrow Decl. at 4.)  Dr. Dostrow ordered plaintiff to receive
22 Gabapentin for an additional thirty days.  (Id.)

23 /////
24 /////
25 /////
26 /////

1           On July 1, 2002, Dr. Douglas, a physician at Mule Creek State Prison, ordered
2 plaintiff to receive a second injection of Toradol. (Dostrow Decl. at 4.) Dr. Douglas also
3 renewed plaintiff's prescription for the Pred-Forte, Atropine 1% and Tobrex eyedrops. (Id.)
4           Dr. Dostrow did not treat plaintiff after July 1, 2002. (Dostrow Decl. at 4.)

ANALYSIS

6           In order to prevail on his Eighth Amendment claim, plaintiff must prove that he
7 had a "serious medical need" and that defendants acted with "deliberate indifference" to that need.
8 Estelle v. Gamble, 429 U.S. 97, 105 (1976). A medical need is serious if "the failure to treat a
9 prisoner's condition could result in further significant injury or the 'unnecessary and wanton
10 infliction of pain'." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992) (quoting Estelle,
11 429 U.S. at 104, 97 S.Ct. 285). Deliberate indifference is proved by evidence that a prison official
12 "knows of and disregards an excessive risk to inmate health or safety; the official must both be
13 aware of the facts from which the inference could be drawn that a substantial risk of serious harm
14 exists, and he must also draw the inference." Farmer v. Brennan, 511 825, 837 (1994). Mere
15 negligence is insufficient for Eighth Amendment liability. Frost v. Agnos, 152 F.3d 1124, 1128
16 (9th Cir. 1998). "Prison officials are deliberately indifferent to a prisoner's serious medical needs
17 when they deny, delay, or intentionally interfere with medical treatment." Hallett v. Morgan, 296
18 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted). Mere differences
19 of opinion between a prisoner and prison medical staff as to appropriate medical care also do not
20 give rise to a § 1983 claim. Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

21           Dr. Dostrow states he has had the opportunity to treat numerous patients who have
22 undergone scleral buckle procedures during his five years as a physician. (Dostrow Decl. at 2.) In
23 Dr. Dostrow's opinion, typically a patient who has undergone a scleral buckle procedure will
24 experience the most pain within the days immediately following the procedure. (Dostrow Decl. at
25 3.) Dr. Dostrow opined that the Pred-Forte eyedrops, Atropine 1% eyedrops, Vicodin and
26 Gabapentin he prescribed would effectively manage any pain plaintiff might have post procedure.

1 (Dostrow Decl. at 2-3.) Dr. Dostrow argues that because plaintiff did not complain of pain
2 between June 26 and June 29, 2002, as evidenced by the lack of medical records reflecting his
3 being seen for any such complaints during that time frame, Dr. Dostrow believed the medication
4 he had prescribed was effectively managing plaintiff's pain. (Dostrow Decl. at 4.)

5        In addition, because both Tylenol #3 and Vicodin are narcotics with equivalent
6 pain relieving capabilities, they can be, and are, used interchangeably. (Dostrow Decl. at 4.)
7 Thus, Dr. Dostrow opines that changing plaintiff's prescription to Tylenol #3 provided plaintiff
8 with a pain medication equivalent to Vicodin while at the same time minimizing the risk plaintiff
9 would develop a narcotic dependence on Vicodin. (Dostrow Decl. at 4.)

10        Moreover, Dr. Dostrow points out that while Dr. Tesluk recommended plaintiff
11 should not require pain medication beyond the first seven days following the scleral buckle
12 procedure, Dr. Dostrow prescribed pain medication for plaintiff for a total period of nine days.
13 (Dostrow Decl. at 4.)

14        In his unverified opposition, plaintiff argues that "Dr. Dostrow admits he never
15 examined or interviewed me in any way when [he] returned from eye surgery on June 26, 2002,
16 [Dr. Dostrow] just cut the medications ordered by the surgeon who did the operation." (Opp'n at
17 2.) Plaintiff noted that Dr. Dostrow "hollered down the hallway that there are very few pain
18 receptors in the eye." (Opp'n at 2.) Plaintiff appears to argue that Dr. Dostrow's failure to
19 examine or interview plaintiff demonstrates deliberate indifference. However, plaintiff has
20 provided no declarations supporting his alleged claims of untreated pain.

21        Plaintiff confirms in his complaint that Dr. Dostrow prescribed pain medications
22 for him, just not in the dosage or for the length of time plaintiff would have preferred. Plaintiff
23 does not allege specific incidents of pain occurring after the pain medications were prescribed by
24 Dr. Dostrow, except for his complaints on June 30, 2002. Plaintiff concedes that on June 30,
25 2002 he was given an injection of Toradol and prescribed Tylenol #3 twice daily for three days.
26 (Complaint at 11.) At most, plaintiff's allegations demonstrate nothing more than a difference of

opinion between plaintiff and Dr. Dostrow concerning the type and dosage of medications that should have been administered.

Plaintiff has provided no evidence to refute Dr. Dostrow's rationale for prescribing the medications he did and has failed to demonstrate Dr. Dostrow's prescriptions caused plaintiff's permanent vision damage.[1] Dr. Dostrow declared there is no medical basis for plaintiff's allegation that Dr. Dostrow was responsible for any permanent vision damage suffered by plaintiff (Dostrow Decl. at 6), and plaintiff has provided no evidence to the contrary.

Simply put, the evidence of record fails to establish a violation of plaintiff's Eighth Amendment rights by Dr. Dostrow.  Absent a showing that the treatment provided by defendant Dostrow was unconstitutionally inadequate, a showing that plaintiff has not made, plaintiff cannot show that the acts of Dr. Dostrow in connection therewith constituted deliberate indifference to his serious medical needs.  Defendant Dostrow is entitled to summary judgment.

III.  Defendant's Motion for Judgment on the Pleadings

In light of the above, this court need not address defendant's motion for judgment on the pleadings.  Said motion will be denied without prejudice.

IT IS HEREBY ORDERED that defendant's February 8, 2006 motion for judgment on the pleadings is denied without prejudice.

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Defendant's February 8, 2006 motion to dismiss be granted; and

2.  Defendant's March 20, 2006 motion for summary judgment be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty days after being served with these findings and recommendations, any party may file written

---

[1] In plaintiff's response to interrogatory no. 9, plaintiff responded that he sustained "unnecessary and wanton infliction of pain and permanent vision damage" as a result of the inactions or actions of Dr. Dostrow. (Turner Decl., Ex. A, at 6.)

1 objections with the court and serve a copy on all parties.  Such a document should be captioned
2 "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that
3 failure to file objections within the specified time may waive the right to appeal the District
4 Court's order.  <u>Martinez v. Ylst</u>, 95 1 F.2d 1153 (9th Cir. 1991).
5 DATED: June 5, 2006.

UNITED STATES MAGISTRATE JUDGE

/001; perc0229.msj