IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LARRY PERCIVAL,

        Plaintiff,                        No. CIV S-03-0229 LKK EFB P

    vs.

MIKE KNOWLES, et al.,

        Defendants.              FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a prisoner without counsel seeking relief for alleged civil rights violations. *See* 42 U.S.C. § 1983. This action proceeds on the February 5, 2003, complaint in which plaintiff alleges that he did not receive adequate medical care following an accident in the sewing shop where he worked. Plaintiff claims that a needle in the sewing machine he was working with splintered, causing fragments to hit and damage his eye. Plaintiff also alleges that prison officials subjected him to unsafe working conditions, and that, in retaliation for his grievances, he was issued a false disciplinary violation. The matter is now before the court on defendants' May 9, 2006, motion for summary judgment on the grounds that plaintiff is not entitled to the relief requested, he did not exhaust administrative remedies with regards to all claims before filing suit, and he cannot recover damages because defendants are entitled to qualified immunity.

# I. Facts

At all times relevant to this action, plaintiff was a prisoner lawfully incarcerated at Mule Creek State Prison. Defs.' Mot. For Summ. J., Stmt. of Undisp. Facts ("SUF"), ¶ 1. Defendant Knowles was the Warden; defendants Reyes was the Litigation Coordinator; defendant Chavez was the Prison Industry Authority (PIA) Business Manager; defendant Phillips was the Industrial Fabrics Superintendent II; defendant Childress was the Work Supervisor; defendant Smith was a physician; and defendant Arong was a Medical Technical Assistant (MTA) at times material to the matters at issue. SUF, ¶ 2.

The Prison Industry Authority (PIA) is a program within the prison setting designed to develop, implement, and evaluate training and certification to increase inmate employment placements within CDCR. SUF, ¶ 3. The jobs offered through PIA give prisoners a chance to work productively, earn funds, improve work habits, and gain occupational skills. *Id*.

There are six enterprises at MCSP, including meat processing, laundry, fabric products, coffee roasting, digital services, and support services. SUF, ¶ 4. Each enterprise strives to emulate the working conditions and environment of private industry in order to assist the prisoners in gaining practical experience and skills. *Id.*

The PIA Fabrics Products enterprise consists of three separate factories. SUF, ¶ 5. Two of the factories are located in Facility A and the other is in Facility B. *Id.* PIA Fabrics Products manufactures garments, including boxer shorts, orange CDCR prisoner, elastic-waist pants, CRCR prisoner pullover shirts, Cal-Trans vests, and other items of clothing. *Id.* In addition, one of the shops is equipped to silk screen garments. *Id.*

The inmates operate nine different kinds of sewing machines. SUF, ¶ 6. Two types of machines, the 5-thread overlock stitch machine and the bar tack machines have plastic face shields. *Id.* Defendants state that although inmates are instructed not to tamper with the face shields, sometimes they remove them. *Id.* Plaintiff disputes this statement. Pl.'s Stmt. of Disptd. Facts ("PDF"), ¶ 1.

Defendants state that the single-needle and chain stitch machines are not required to have plastic face shields and there is no place on these machine for a face shield to attach. SUF, ¶ 7. Plaintiff disputes this statement. PDF, ¶ 2. Defendants state that these machines are equipped with wire safety guards at the needle to prevent inmates from putting their fingers under the needle while the machine is in use. SUF, ¶ 7. Plaintiff disputes this fact. PDF, ¶ 3.

Defendants state that in addition to the safety guards, there are protective goggles available to any inmate who requests them. SUF, ¶ 8. Plaintiff disputes this fact. PDF, ¶ 4. While goggles are available, there are no provisions that require the use of protective eyewear while operating a machine. SUF, ¶ 8.

Plaintiff was hired to work in PIA Textiles/Sewing in September 2001. SUF, ¶ 8. Plaintiff was advised of the potential hazards in PIA and was counseled in safe work conditions. *Id*.

In February 2002, the new PIA Fabrics Products Shop was activated. SUF, ¶ 10. However, inmates were not allowed to be assigned to positions in that area until an alarm system was installed. *Id.* That took approximately one-and-a-half months. *Id.*

The new shop, which was a remodeled classroom, had to have the restroom brought into compliance with the Americans with Disabilities Act (ADA). SUF, ¶ 11. A toilet and a sink had to be added, with the necessary space in between. *Id.* Defendants state that the eyewash station is in the center of the restroom, which is in the middle bathroom floor so it is easily accessible to all inmates. *Id.* Plaintiff disputes this fact. PDF, ¶ 5. The eyewash station was operational at the time PIA Fabrics Products Shop was activated. SUF, ¶ 11.

Prison Industry has a checkoff procedure to ensure that PIA is in compliance with Title 8 and OSHA standards. SUF, ¶ 12. The checkoff procedure has 57 areas that are checked every month. *Id.* If an area is not in compliance, the supervisor of that area is notified and required to come into compliance with OSHA standards. *Id.* The checkoff procedures for the

/////

eyewash station include the inquiry: is the eyewash station checked weekly (Title 8, subsection 5162, review emergency eyewash station). *Id.*

In February 2002, the new PIA Fabrics Products Shop was activated. SUF, ¶ 13. Defendants state that, for the month and a half after activation inmates were not allowed to be assigned to positions in that area until an alarm system was installed. *Id.* Plaintiff disputes this fact. PDF, ¶ 8.

Defendants state that in April 2002, the PIA Fabrics Products Shops at Mule Creek State Prison met industry standards, including, but not limited to, safe working areas for inmates. SUF, ¶ 15. Defendants also state that the workshops were in compliance with building and safety codes, environmental conditions, and safety and emergency procedures. *Id.* Plaintiff disputes both of these statements. PDF, ¶ 9.

On April 2, 2002, plaintiff was operating a single-needle machine. SUF, ¶ 16. Defendants state that plaintiff was not wearing protective goggles at this time, and that although goggles were available for use by the inmates, plaintiff never used them because he found them to be cumbersome. *Id.* Plaintiff disputes these facts. PDF, ¶ 10. Plaintiff did not complain to his supervisors that the goggles were uncomfortable and difficult to use. SUF, ¶ 16.

At approximately 10:45 a.m., plaintiff notified defendant Childress that the needle on his machine had broken and struck him in the eye. SUF, ¶ 17.

At the time plaintiff reported the injury, a truck was being unloaded at the shop. SUF, ¶ 18.

There are procedures in place to assist an inmate injured while working in the Fabric Products Shop. SUF, ¶ 19. If an injury occurs, the supervisor immediately calls the Medical Technical Assistant (MTA) and advise medical staff of the injury. *Id.* After informing the medical department, the supervisor notifies his or her superior. *Id.* The inmate is then sent out to seek medical attention. *Id.* The supervisor then fills out worker's compensation forms. *Id.*

////

1    If the shop is in the process of unloading, or a work change is occurring, a light flashes alerting staff and inmates that exit from the building is restricted. SUF, ¶ 20. This is a precautionary measure to prevent inmate escape. *Id.* Once the light stops flashing, inmates can again leave the building. *Id.*

If an emergency occurs while a truck is unloading or during work change, the supervisor can phone the medical clinic and summon medical assistance to the area, or can sound an alarm to summon help. SUF, ¶21.

Defendants state that after plaintiff reported his eye injury and all the inmates who worked in the shop had been accounted for, plaintiff was escorted to the medical clinic. SUF, ¶ 22. Plaintiff disputes this fact. PDF, ¶ 11. Defendant Childress recalls no unusual delays in getting medical treatment for plaintiff. *Id.*

Plaintiff was seen by the MTA in the A Facility Clinic at 11:41 a.m.. SUF, ¶ 23. Plaintiff was then examined by Dr. Milliman, who referred him to the eye clinic to see Dr. Cole. *Id.*

Approximately one hour later, plaintiff complained to Dr. Cole that a sewing needle had shattered and pieces of the needle remained in his eye. SUF, ¶ 24. An examination and x-ray found no foreign body in the eye. *Id.* Dr. Cole diagnosed plaintiff with a corneal abrasion, superficially in his right eye. *Id.* Antibiotic eye drops and Motrin were prescribed. *Id.*

On April 16, 2002, during a follow-up visit, Dr. Cole suspected that fluid was leaking from Percival's right eye under the retina. SUF, ¶ 25.

Plaintiff was seen again on May 16, 2002. SUF, ¶ 26. During that follow-up visit, plaintiff was referred to Dr. Tesluk, an ophthalmologist, as a "routine" case. *Id.*, Defs.' Mot. for Summ. J., Ex. F at 30. Plaintiff again met with Doctor Cole, the optometrist, to discuss his case on June 18, 2002. Ex. G at 2.

////

////

5

1    On June 25, 2002, plaintiff underwent surgery, successfully repairing a detached retina.
2 SUF, ¶ 27.  A post-operative CT scan revealed no evidence of a metallic foreign body in the eye.
3 *Id.*

4    Plaintiff had a post-surgical follow-up visit on July 15, 2002.  SUF, ¶ 28.  The
5 ophthalmologist confirmed that the retina was completely attached with adequate scarring.  *Id.*

6    One month later, on August 13, 2002, the optometrist prescribed eye glasses and artificial
7 tears.  SUF, ¶ 29.

8    In March, April, October and December, 2003, plaintiff was seen by the optometrist for
9 follow-up care.  SUF, ¶ 30.

10    Although plaintiff claims that he did not need glasses prior to the April 2, 2002, injury, a
11 review of his medical file indicates that he was first seen by the optometrist nearly one year
12 earlier on April 24, 2001, complaining of blurred vision in his right eye.  SUF, ¶ 31.  Plaintiff
13 was prescribed prison issued eye glasses.  *Id.*  Defendants state that there is no indication that the
14 slight delay in getting plaintiff to the A-Facility clinic caused any harm.  *Id.*  Plaintiff disputes
15 this fact.  PDF, ¶ 13.

16    Plaintiff filed an administrative grievance on April 10, 2002, complaining that the
17 restroom in the PIA sewing shop was out of bounds, and the eyewash station had been removed.
18 SUF, ¶ 32.  The grievance also alleged that defendant Childress did not allow plaintiff to go to
19 the clinic as soon as the incident was reported.  *Id.*  He requested in the grievance that safety
20 equipment be installed and that he be compensated for the injury.  *Id.*

21    The grievance was bypassed at the informal and first formal levels of review.  SUF, ¶ 33.
22 Defendants state that defendant Reyes investigated plaintiff's complaints and found that the
23 eyewash station was neither out-of-bounds or inoperative.  *Id.*  Plaintiff disputes that defendant
24 Reyes investigated plaintiff's complaints in his grievance filed April 10, 2002.  PDF, ¶ 14.
25 Reyes also found that there were goggles available for inmates to use when operating the sewing
26 machines.  SUF, ¶ 33.

A review of the grievances filed by plaintiff in 2002 and 2003 reveals that he did not file a grievance regarding his allegations against either Dr. Smith or MTA Arong. SUF, ¶ 34.

During deposition testimony, plaintiff conceded that he did not file grievances against either MTA Arong or Dr. Smith. SUF, ¶, 35.

On April 24, 2002, Sergeant Gerke issued a disciplinary violation to plaintiff, alleging that plaintiff had made false allegations on a CDC Form 602. SUF ¶ 36.

Lieutenant Blim heard the rules violation and found Percival not guilty of the charges. SUF, ¶ 37. Blim found that the eyewash station was in a restroom marked out of bounds, and that it had been dismantled. *Id*. Blim also found that the sewing machine plaintiff was working on did not have an eye guard, and that goggles were available for use, but not required *Id.*

**II.     Standards Applicable to the Motion to Dismiss for Failure to Exhaust**

Defendants seek dismissal under Rule 12(b) of the Federal Rules of Civil Procedure. While the Ninth Circuit has stated that Rule 12(b) is the proper mechanism for resolving questions arising under 42 U.S.C.§ 1997e(a), *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003), the reason underlying that decision has been undermined. The Ninth Circuit found that failure to exhaust was a matter in abatement which should be raised in a motion made under "unenumerated Rule 12(b)."[1] *Wyatt*, 315 F.3d at 1119. However, the United States Supreme Court recently clarified that failure to exhaust is an affirmative defense which defendant has the burden of pleading and proving. *Jones v. Bock*, ___ U.S. ___, 127 S.Ct. 910, 921 (2007). Federal courts appropriately consider affirmative defenses that are supported by evidence extrinsic to the complaint on summary judgment. Here, defendant's motion necessarily requires the court to consider the affidavits and exhibits presented for the purpose of proving the absence of

---

[1] *Wyatt* is clear that regardless of nomenclature, a motion attacking failure to exhaust is not a challenge to the sufficiency of the complaint. It is a motion in which defendant must raise and prove by evidence the absence of exhaustion. *Id.* In this regard, the Ninth Circuit in *Wyatt* provides further guidance. It recognizes that when the district court looks beyond the pleadings to a factual record in deciding the exhaustion motion it necessarily does so under "a procedure closely analogous to summary judgment." *Id*., n.14

7

exhaustion. Accordingly, the court finds that a motion for summary judgment is the proper mechanism for resolving the question of whether plaintiff satisfied the exhaustion requirement.

### III. Rule 56 Standards

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[2] As explained by the Ninth Circuit, the utility of Rule 56 to screen which cases actually require resolution of disputed facts over material issues (through presentation of testimony and evidence at trial) has been clarified and enhanced.

> In three recent cases, the Supreme Court, by clarifying what the non-moving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment. First, the Court has made clear that if the non-moving party will bear the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Second, to withstand a motion for summary judgment, the non-moving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986) (emphasis added). Finally, if the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). No longer can it be argued that *any disagreement* about a material issue of fact precludes the use of summary judgment.

*California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.), *cert. denied*, 484 U.S. 1006 (1988) (parallel citations omitted) (emphasis added). In short, there is no "genuine issue as to material fact," if the non-moving party "fails to make a showing sufficient to

---

[2] On July 31, 2006, the court expressly informed plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988). Pursuant to *Wyatt*, 315 F.3d at 1120, n.4, that order also expressly informed plaintiff of the requirements for opposing a failure to exhaust motion that is supported by affidavits or declarations and exhibits.

8

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Grimes v. City and Country of San Francisco*, 951 F.2d 236, 239 (9th Cir. 1991) (quoting *Celotex*, 477 U.S. at 322).

**IV.     Analysis on Issue of Failure to Exhaust**

Defendants argue that summary judgment is warranted in favor of defendants Arong and Smith because plaintiff failed to first address his claims against them by use of the prison grievance process. Civil rights claims arising in the prison context must be administratively exhausted before being filed in federal court. The applicable statute is 42 U.S.C. § 1997e(a), which provides in relevant part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

This requirement is mandatory and unequivocal. *Booth v. Churner*, 532 U.S. 731, 741 (2001); *McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2002) ("Congress could have written a statute making exhaustion a precondition to judgment, but it did not. The actual statute makes exhaustion a precondition to *suit*." (citation omitted)). A prisoner seeking leave to proceed *in forma pauperis* in an action challenging the conditions of his confinement brings an action for purposes of 42 U.S.C. § 1997e when he submits his complaint to the court. *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006). Therefore, a prisoner must exhaust available administrative remedies before filing any papers in federal court and is not entitled to a stay of judicial proceedings in order to exhaust. *Id.* at 1051; *McKinney v. Carey*, 311 F.3d 1198 (9th Cir. 2002). Defendant has the burden of proving that plaintiff did not exhaust. *Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005); *Wyatt*, 315 F.3d at 1119.

California prisoners may appeal "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). The regulations require the use of specific forms but contain no guidelines for

9

grievance content. *Id*., at §§ 3084.2, 3085. Prisoners ordinarily must present their allegations on one informal and three formal levels of review, although the informal and the first formal levels may be bypassed. *Id*., at § 3084.5. A division head reviews appeals on the first formal level, *see Id.*, at § 3084.5(b)(3) (authorizing bypass of the first formal level when the division head cannot resolve it), and the warden or a designee thereof reviews appeals on the second formal level. *See Id*., at § 3084.5(e)(1). Generally, completion of the third level, the Director's Level of Review, exhausts the remedy. *Id*., at § 3084.1(a).

Here, defendants' evidence shows that plaintiff did not file an appeal with regards to his medical claims against defendants Arong or Smith. SUF, ¶ 34. Plaintiff provides no evidence to the contrary. Indeed, plaintiff conceded the point in his deposition testimony. SUF, ¶ 35. The court finds that plaintiff has failed to exhaust administrative remedies with regards to his claims of inadequate medical care in regards to defendants Arong and Smith therefore recommends granting summary judgment in favor of those defendants.

**V.     Plaintiff's Eighth Amendment Claims**

     **A.     Inadequate Medical Care**

Plaintiff alleges that defendants Childress and Dr. Cole violated his Eighth Amendment right to adequate medical care by delaying medical treatment following the accident in which his eye was injured. In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 299 (1991); *McKinney v. Anderson*, 959 F.2d 853 (9th Cir. 1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference." *Hudson v. McMillian*, 503 U.S. 1, 4 (1992).

////

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. *See, e.g., Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990) (citing cases); *Hunt v. Dental Dept.*, 865 F.2d 198, 200-01 (9th Cir. 1989). *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds, WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In *Farmer v. Brennan*, 511 U.S. 825 (1994) the Supreme Court defined a very strict standard which a plaintiff must meet in order to establish "deliberate indifference." Of course, negligence is insufficient. *Farmer*, 511 U.S. at 835. However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient. *Id.* at 836-37. Neither is it sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk. *Id.* at 842.

In analyzing this type of Eighth Amendment claim, the court considers the disregard of a risk of harm of which the actor is actually aware using the subjective standard of recklessness in the criminal sense. *Id.* at 838-842. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. If the risk was obvious, the trier of fact may infer that a defendant knew of the risk. *Id.* at 840-42. However, obviousness *per se* will not impart knowledge as a matter of law.

////

1    Additionally, mere delay in medical treatment without more is insufficient to state a
2 claim of deliberate medical indifference. *Shapley v. Nevada Bd. of State Prison Com'rs*, 766
3 F.2d 404, 408 (9th Cir. 1985). Although the delay in medical treatment must be harmful, there is
4 no requirement that the delay cause "substantial" harm. *McGuckin*, 974 F.2d at 1060 (citing
5 *Wood v. Housewright*, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and *Hudson*, 112 S. Ct. at 998-
6 1000). A finding that an inmate was seriously harmed by the defendant's action or inaction
7 tends to provide additional support for a claim of deliberate indifference; however, it does not
8 end the inquiry. *McGuckin*, 974 F.2d at 1060. In summary, "the more serious the medical needs
9 of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the
10 more likely it is that a plaintiff has established deliberate indifference on the part of the
11 defendant." *Id*. at 1061.

12    Plaintiff alleges that, when he informed defendant Childress, his work supervisor, that he
13 was injured and needed to see a doctor, she stated that he could not leave the shop until after the
14 supply truck was unloaded and a count of the inmates in the shop had been cleared. After 40
15 minutes, plaintiff was allowed to go to the A-Facility Clinic.

16    Plaintiff next alleges that he was brought to the optometrist's office for treatment of his
17 eye injury, he was made to wait for an hour for defendant Dr. Cole to finish his lunch before Dr.
18 Cole examined and treated him. Upon examination, Dr. Cole found that plaintiff's eye had been
19 scratched in several places and prescribed several medications for plaintiff's eye. Plaintiff
20 claims that had he been immediately allowed to see the doctor on an emergency visit his eye
21 would not have been so severely damaged and he would not have suffered partial vision loss in
22 that eye. Plaintiff does not support this contention with evidence. As stated above, mere delay
23 in medical treatment without more is insufficient to state a claim of deliberate medical
24 indifference. *Shapley*, 766 F.2d at 408. There is no question that plaintiff required medical
25 attention for a serious medical need; however, the record is devoid of any evidence that the 40-
26 minute delay and later one-hour delay caused plaintiff additional harm beyond that already

1  sustained by his injury. The court finds that plaintiff has not adduced evidence to demonstrate a
2  genuine issue of material fact as to harm arising from delay in medical treatment as a result of
3  defendants Childress' and Cole's actions. The court therefore recommends that summary
4  judgment be granted as to those defendants on this claim.

    **B. Deliberate Indifference to a Known Risk of Harm**

    Plaintiff alleges that defendants Knowles, Chavez, Phillips, and Childress violated his Eighth Amendment rights by subjecting him to unsafe work conditions. Specifically, plaintiff claims that defendants knew of and disregarded serious risks to his safety, because they knew that the single-needle sewing machines in the prison's Fabric Products Shop were not equipped with plastic face shields, there were no safety goggles available, and the eye wash station was removed from the shop. Defendants argue that plaintiff has failed to allege facts sufficient to state a claim that they were deliberately indifferent to unsafe working conditions.

    The Eighth Amendment requires prison officials to ensure the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825 (1994); *Hearns v. Terhune*, 413 F.3d 1036, 1040-42 (9th Cir. 2005); *LeMaire v. Maass*, 12 F.3d 1444 (9th Cir. 1993). If they fail, they violate the Eighth Amendment only if they were deliberately indifferent to the risk of harm in question, meaning they knew of it yet failed to take reasonable measures to ensure prisoners' safety. *Farmer*, 511 U.S. at 837; *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991); *Hearns v. Terhune*, 413 F.3d 1036 (9th Cir. 2005). Allegations of serious safety hazards in occupational areas exacerbated by another condition, such as inadequate lighting, state a claim for safety and security threats serious enough to violate the Eighth Amendment. *Hoptowit v. Spellman*, 753 F.2d 779 (9th Cir. 1985); *see also Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996) (single oven with broken door hinges did not violate contemporary standards of decency where plaintiff failed to plead additional condition exacerbating the inherent danger of the broken hinges).

    Plaintiff's declaration asserts that defendants Knowles, Chavez, and Reyes took weekly tours to check on the construction status of the shop. From this, he concludes, they were "well

13

aware of the fact that the working conditions and the environment were unsafe in the new shop." Plaintiff's Declaration in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Dec."), ¶ 15. Further, attached to his verified complaint are exhibits[3] tending to show that those safety hazards in fact caused him injury, when a sewing needle shattered, causing metal shards to strike him in the eye and ultimately cause retinal detachment with consequent loss of vision. Compl., at 4-6, 10-13; Ex. 1 to Compl., at 1, 4-5; Ex. 2 to Compl., at 1-3; Ex. 4 to Compl., at. 2-4; Ex. 5 to Compl., at 1-9.  Plaintiff has adduced evidence that on the day he was working in the Prison Industry Authority sewing shop he was working on a machine that was not equipped with a face shield; he was not required to wear safety goggles notwithstanding the absence of a face shield on the machine; the needle on the machine shattered, causing splintered fragments of the needle to hit him in the right eye; and the only available eyewash station was inoperable at the time, exacerbating the lack of protection from such an injury occurring.  This evidence demonstrates a genuine issue of material fact for trial as to whether these defendants knew of yet failed to take reasonable measures to ensure plaintiff's safety.  Therefore, the court recommends defendants' motion for summary judgment be denied as to defendants Reyes, Chavez, and Knowles.

Plaintiff has adduced evidence that defendants Childress, plaintiff's work supervisor, and defendant Phillips, the Industrial Fabrics Superintendent, had knowledge of a serious risk to inmate safety in the fabrics shop since the eyewash station was removed on the orders of PIA Supervisory staff, and while there are safety goggles in the shop's tool room, the use of them is not required. Compl., at 2.; Ex. 3 to Compl., at 11.  Defendants do not adduce evidence that defendants Childress and Philips undertook any measures to abate the substantial risk of serious harm that the combined lack of eye wash station and lack of required eye protection presented.

---

[3] Plaintiff's verified complaint includes his affidavit detailing the cause of his injury, and appended to his complaint are his Workers' Compensation claim form, a Medical Report of Injury form completed by Dr. Milliman, and medical records from treatment he received following his injury, all making reference to a shattered needle hitting plaintiff's right eye.

As the shop's supervisory staff, defendants Childress and Philips knew of the risk of harm in the shop, lack of face guards on the machines, the lack of safety goggles, and the direct order to dismantle and remove the eye wash station by PIA supervisory staff, of which defendants Childress and Philips are members, evidences deliberate indifference on the part of these defendants. Further, plaintiff's evidence shows that defendants affirmatively took the step of ordering the removal of the eye wash station, a safety feature of the shop, and this evidence shows more than a mere "failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known." The court therefore recommends denying the motion for summary judgment as to these defendants on this issue.

## VI. Plaintiff's Retaliation Claim

Plaintiff claims that defendant Reyes filed a false disciplinary charge against him in retaliation for plaintiff's filing of an appeal based on the conditions in the fabrics shop that plaintiff contends led to his injury. In plaintiff's April 10, 2002, appeal, he complained specifically of a lack of safety goggles, working eyewash station, and sewing machine face shields in the fabric shop. Plaintiff stated that:

> [T]he needle on my sewing machine shattered during routine operations, fragments of the needle hit me in the face and several pieces entered my right eye, I immediately proceeded to the restroom where the Eye Wash station is located. This restroom is taped off and "Out-of-Bounds" to all inmate workers. When I got to this restroom, I found that the Eye-Wash Station had been completely removed. I then immediately informed my work Supervisor 'Phyllis,' (Last name unknown)[4] of what had happened and that there was no Eye-Wash Station to get the metal needle fragments out of my eye. She told me to try it in the bathroom sink. I attempted to do this to no avail. I informed 'Phyllis' that I was unable to get the metal fragments out of my eye and I needed to see a doctor.

Plaintiff further stated that "there isn't any face guards on the machines, no safety goggles are issued, and the Eye-Wash Station has been completely removed." Ex. 3 to Compl., at 2-6.

Plaintiff's appeal was processed as an emergency appeal by defendant Reyes, the Inmate Appeals Coordinator. Later, on April 24, 2002, plaintiff received a Rules Violation Report

---

[4] Plaintiff is referring to defendant Phyllis Childress.

15

("RVR") classified as serious, accusing him of falsifying a state document or bringing a false allegation. This RVR stated that:

> On April 10, 2002 you, inmate Percival, E-43835, A4-219-L, made false allegations on CDC Form 602 (log #02-00876) regarding the availability of safety equipment in Facility "A" Sewing PIA. You specifically stated, 'There isn't any face guards on the machines, no safety goggles are issued, and the eye wash station has been completely removed.' When, in fact, the single-needle machines that you operate do not come equipped with a needle shield. Safety goggles are available for every machine operator to check-out. The eye-wash station is located in the inmate restroom area, and is in plain view. The eye wash station is permanently affixed to the bathroom wall, and is fully functioning. The State of California, Mule Creek State Prison, has provided the required safety equipment for this vocational area. Inmate Percival is a patient/participant in the Mental Health Delivery System program. Inmate Percival is aware of this report.

On April 29, 2002, Lieutenant J.C. Blim conducted a hearing on plaintiff's RVR. Lieutenant Blim walked with plaintiff to the shop where plaintiff pointed out to him the bathroom that was still taped off and out of bounds, the dismantled eyewash station, and that there were no face shields on the sewing machines. There were two boxes marked "safety goggles" in the tool room that Lieutenant Blim did not inspect. Back at his office, Lieutenant Blim informed plaintiff that he would be finding plaintiff not guilty of the RVR. Lieutenant Blim then called defendant Reyes in for an opportunity to respond to Blim's findings. There was a heated exchange out of plaintiff's presence. Ultimately, defendant Reyes stated he would not be changing his position on the RVR, and Blim nevertheless found plaintiff not guilty.

Inmates have a right to be free from the filing of false disciplinary charges in retaliation for the exercise of constitutionally protected rights. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995); *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). The Ninth Circuit treats the right to file a prison grievance as a constitutionally protected First Amendment right. *Hines v. Gomez*, 108 F.3d 265 (9th Cir. 1997); *see also Hines v. Gomez*, 853 F. Supp. 329 (N.D. Cal. 1994) (finding that the right to utilize a prison grievance procedure is a constitutionally protected right)(cited with approval in *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995)); *Graham v. Henderson*, 89 F.3d 75 (2d Cir. 1996) (retaliation for pursing a grievance violates the right to petition government for redress of

16

grievances as guaranteed by the First and Fourteenth Amendments); *Jones v. Coughlin*, 45 F.3d 677, 679-80 (2d Cir. 1995) (right not to be subjected to false misconduct charges as retaliation for filing prison grievance); *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) (filing disciplinary actionable if done in retaliation for filing inmate grievances); *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988) ("Intentional obstruction of a prisoner's right to seek redress of grievances is precisely the sort of oppression that section 1983 is intended to remedy" (alterations and citation omitted)); *Cale v. Johnson*, 861 F.2d 943 (6th Cir. 1988) (false disciplinary filed in retaliation for complaint about food actionable).

     In order to state a retaliation claim, a plaintiff must plead facts which suggest that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the defendant's conduct. *See Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). The plaintiff must also plead facts which suggest an absence of legitimate correctional goals for the conduct he contends was retaliatory. *Pratt*, 65 F.3d at 806 (citing *Rizzo*, 778 F.2d at 532). Verbal harassment alone is insufficient to state a claim. *See Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987). However, even threats of bodily injury are insufficient to state a claim, because a mere naked threat is not the equivalent of doing the act itself. *See Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987). Mere conclusions of hypothetical retaliation will not suffice, a prisoner must "allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Frazier v. Dubois*, 922 F.2d 560, 562 (n. 1) (10th Cir. 1990).

     Here, it is beyond dispute that plaintiff was charged with rules violations for having filed the form 602 grievance. The RVR itself cites plaintiff's grievance as the basis for charging him with the alleged violations. Thus, it is precisely plaintiff's exercise of his First Amendment right to file a grievance that was the substantial and motivating factor in defendant Reyes' filing of the RVR against plaintiff. Plaintiff has also pleaded facts that suggest an absence of legitimate correctional goals, in that Lieutenant Blim's findings at the RVR hearing were directly

17

1   contradictory to the allegations in the RVR, and supported plaintiff's allegations in his appeal.
2   Because there remains a genuine issue of material fact as to whether the RVR was filed in
3   retaliation for plaintiff's exercise of protected speech, the court recommends denying defendant
4   Reyes' motion for summary judgment.

5   **VII.   Qualified Immunity**

6   Defendants contend that, even if their actions amounted to a violation of plaintiff's rights,
7   the right was not clearly established, and they are therefore entitled to qualified immunity.
8   Qualified immunity protects "government officials . . . from liability for civil damages insofar as
9   their conduct does not violate clearly established statutory or constitutional rights of which a
10  reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  In
11  *Saucier v. Katz,* the Supreme Court set out a two-step inquiry in determining whether an official
12  has qualified immunity. 533 U.S. 194, 201 (2001).  First, "taken in the light most favorable to the
13  party asserting the injury, do the facts show the officer's conduct violated a constitutional right?"
14  *Id*.  Second, the court must "ask whether the right was clearly established." *Id.*  "The relevant,
15  dispositive inquiry in determining whether a right is clearly established is whether it would be
16  clear to a reasonable officer his conduct was unlawful in the situation he confronted." *Id.*

17  The foregoing findings that defendants were deliberately indifferent to a serious risk of
18  harm tp plaintiff satisfy *Saucier's* first prong.  Defendants argue that plaintiff's right to a safe
19  work environment was not clearly established at the time of his injury.  Whether the right at
20  issue in a claim of qualified immunity is clearly established is judged as of the date of the
21  incident alleged and is a pure question of law.  In *Saucier,* the Supreme Court held that the
22  "clearly established" inquiry "must be undertaken in light of the specific context of the case."
23  533 U.S. at 201.  Defendants point out that while some courts have determined that inmates are
24  constitutionally entitles to workplace safety (citing to *Bibbs v. Armontrout*, 943 F.2d 26, 27 (8th
25  Cir. 1991); *Choate v. Lockhart*, 7 F.3d, 1374 (8th Cir. 1993)), other courts have determined that
26  unsafe working conditions amount to no more than negligence, best addressed in a state law tort

1  claim. *See Wright v. Collins*, 766 F.2d 841 (4 Cir. 1985) (prison supervisor forcing prisoner to
2  use an allegedly unsafe ladder constituted negligence for which there were adequate state law
3  remedies); *Major v. Benton*, 647 F.2d 110, (10th Cir. 1981) (inmate's death from cave-in of
4  sewer ditch resulting from the alleged negligent action of prison officials in failing to formulate
5  and implement safety measures raised on constitutional claim).

6        Defendants further argue that, even assuming plaintiff had a right to be free from a
7  hazardous work environment, the undisputed evidence shows that the PIA Fabrics Products Shop
8  was compliant with safety regulations. Plaintiff disputes this evidence, however, and both
9  plaintiff and defendants have adduced the hearing report on plaintiff's RVR, in which Lieutenant
10 Blim found that there was no operable eyewash station in the shop and the inmate workers were
11 not required to wear the goggles notwithstanding the lack of face shields on certain machines,
12 which defendants argue was in compliance with OSHA safety standards.

13       The alleged conduct in allowing plaintiff to work in a sewing shop where the machine he
14 was using was not equipped with a face shield; safety goggles, if available, were not required to
15 be worn by inmates operating those machines without the face shields; and the eyewash station
16 was inoperable, if true, constitutes deliberate indifference to plaintiff's safety. Qualified
17 immunity protects "all but the plainly incompetent or those who knowingly violate the law."
18 *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Viewing the evidence in the light most favorable to
19 plaintiff, the contours of plaintiff's rights under the Eighth Amendment were sufficiently clear
20 that a reasonable officer would understand that his or her actions were unlawful in the situation
21 confronted. *Saucier*, 533 U.S. at 202. Accordingly, defendants are not entitled to judgment as a
22 matter of law based on qualified immunity.

23       In accordance with the above, IT IS HEREBY RECOMMENDED that defendants' May
24 9, 2006, motion for summary judgment be granted as to defendants Arong and Smith and denied
25 as to defendants Knowles, Chavez, Reyes, Childress, and Phillips.
26 ////

1  These findings and recommendations are submitted to the United States District Judge
2  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days
3  after being served with these findings and recommendations, any party may file written
4  objections with the court and serve a copy on all parties.  Such a document should be captioned
5  "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections
6  within the specified time may waive the right to appeal the District Court's order. *Turner v.*
7  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).
8  Dated:  September 27, 2007.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE